REED et al. v. POMEROY et al.

(Circuit Court, D. Massachusetts. December 23, 1895.)

No. 379.

1. PATENTABLE INVENTION—WHIPSTALK MACHINE.
There is no patentable invention in so changing the location of the knife in a machine for splitting whipstalks that instead of splitting off a small strip, thicker at one end than at the other, by a diagonal movement of the stalk against the knife, the machine will, by a like motion, divide the stalk into two equal strips, each thicker at one end than at the other.

2. SAME.
The Reed patent, No. 454,497, for improvements in a "stalk-splitting machine for whips," is void for want of patentable invention.

This was a suit in equity by Thomas W. Reed and others against John P. Pomeroy and others for alleged infringement of a patent.

: ˙William H. Chapman, for complainants.
˙ Fish, Richardson & Storrow, for defendants.

˙ ˙ALDRICH, District Judge.    The supposed invention involved in
this suit relates to improvements in a machine patented to M. E.
Moore, April 17, 1877, No. 189,569, for fitting sidings for whips; and
the improvements, which are covered by letters patent granted to T.
W. Reed under date of June 23, 1891, and numbered 454,497, and which
are the subject of the present controversy, consist in an attachment
to the Moore machine, which Reed, in his specification, denominates
a "stalk-splitting machine for whips."    Reed, the patentee, more par-
ticularly describes—or, in other words, limits—his supposed inven-
tion by the language used in lines 10, 11, and 12, page 2, of his speci-
fication, wherein he says:

˙ "The table, with its appendages, the serrated guide rollers, and the knife,
are all that I add to the Moore machine."                               :

˙ Having described the invention, he makes his claim for letters
patent:

   "In a stalk-splitting machine for whips, the combination of the rollers 1 and
2, having their faces transversely serrated; rollers 7, 8, and 9, with circum-
ferential serrations in grooves to prevent the turning of stalks conveyed
therein; the cam guide, with bar and cam to operate the same; the pressure
guide acting against said cam guide; and the knife, E, held rigidly to the
frame,—substantially as set forth."

˙ Counsel for the complainants, in argument, makes no claim for
merit in the rolls with circumferential serrations, but contends that
the patentee specified such rolls under the erroneous impression that
flat-faced rolls would not hold the stalk from turning as it passed
through the machine, and, it having been demonstrated that such
belief on the part of the patentee was a mistaken one, that the cir-
cumferentially serrated rolls were discarded; and the complainants
therefore make no claim for these rolls, as an essential in their device,
but, on the other hand, ask to be protected in an invention of a com-
bination which was new, irrespective of this form of roll.    The ob-
ject of the supposed invention was to provide a machine which would
successfully split stalks of rattan, by beginning at one end of the
stalk at one side of˙ the axial center, and terminating ·at the other
end upon the opposite side of the axial center, thus producing two
correspondingly tapered pieces of rattan; so that the larger or butt
ends of such pieces, with others, when placed upon a center, and all
tapering towards the other end, would give the desired form of the ˙
whip.  ˙˙Neither the original Moore˙ machine nor the alleged infrin-
ging machine employ the circumferentially serrated rollers, and this
feature of the Reed patent may therefore be treated as of no mate-
riality upon the question under consideration.    The complainants
contend that they may discard this feature, and thereby limit their
claim, and hold their invention of a useful combination, irrespective
of this form of roll; and in order to determine the question of inven-
tion in respect to what remains, for· the purposes of this case, the
complainants are treated as not bound by the broad claim which
embraces this form of roll in its combination.. . As has been observed,

the object was to split pieces of rattan in such a manner as should leave two correspondingly tapered halves, and this is accomplished by the complainants' machine,—and by the defendants' alleged infringing machine as well,—by holding the stalk firmly, so that it shall not twist or turn, and forcing it diagonally upon a fixed splitting knife, and through the machine, when you have two pieces of rattan, thick at one end, and tapering gradually to the other end. It is obvious that the old Moore machine, constructed in accordance with the Moore patent, contained all the mechanism necessary for holding and passing the stalk diagonally upon a knife; but its knife, although a fixed knife, was so located or attached as to take off a shaving or strip only, which was passed from the side of the machine at the point where the strip or shaving was severed, while the main stalk passed through the rollers, and from the end of the machine. It, however, possessed the means of presenting the stalk diagonally, and would take off a strip or shaving thicker at one end than the other. Indeed, it was admitted in argument that the machine constructed under the Moore patent possessed the means for holding and presenting the stalk upon a knife in such a manner as to accomplish the desired result, provided its knife was properly located and attached. The Reed patent in suit presents a vertically disposed knife, rigidly fixed to the frame at such a place and in such a manner that as the stalk is forced longitudinally, under slight diagonal direction, upon the knife, the piece is divided in halves thick at one end and thin at the other. The Moore machine, constructed under the Moore patent, possesses all the means of holding the stick, and passing it longitudinally and diagonally upon a knife, but its knife is so attached to the frame of the machine that it takes off a shaving or strip thick at one end and thin at the other. So it would seem that one machine will divide a stick longitudinally by taking off a strip, whereby two pieces are left thick at one end and thin at the other, but not of corresponding size, while the other will divide a stick longitudinally by splitting it so as to leave both pieces thicker at one end than at the opposite end, and of corresponding size. All that remains, therefore, of the complainants' invention, by way of improvement of the Moore machine, consists of the knife vertically disposed over the guide rolls so as to split the stick diagonally, instead of shaving or stripping it diagonally, as was done by the Moore machine, with the knife at the side of the guide rolls; and the question presented is whether this amounts to invention. The uses of the knife, as applied to wood, are old. In the old civilization, with the knife in hand, the cutting function was so ingeniously applied as to produce wonderful and marvelous shapes and results; and in modern times its function as a fixed, adjustable, and movable instrument has been manifest in machinery designed for cutting, splitting, and shaping wood. In view of the varied and well-understood uses of the knife in olden and modern times, the idea involved in attaching it to the frame of the machine over the guide rolls, instead of attaching it to the frame at the side of the guide rolls, cannot be treated as patentable invention. The bill should be dismissed, with costs, and it is so ordered.